Talbot *v.* Copeland.

---

TALBOT *versus* COPELAND & *als.*

The location of the dividing line between two townships, made by the owner of one, can have no effect upon the rights of the owner of the other, unless he was a party to such location.

Where a number of townships were owned by the same proprietors, acts done by them on one showing its boundary, with reference to a particular purpose, can have no controlling influence to determine the boundaries of an adjoining township.

Nor, if such owners established the corner bound of one of their townships, can the corner of the adjoining township be necessarily determined by the distance therefrom represented on their plan.

Talbot *v.* Copeland.

That a *plan* may be admissible to show the boundaries of a deed, it must be referred to as a part of its description. Without such reference, it cannot be protracted upon the earth to show the location.

The actual running of one of the lines of a township by the owner, and a reference thereto by the grantor, may be conclusive upon the grantee as to that line; but without reference to a plan, it can have no effect in determining the other boundaries of the township.

Where the dividing line between two townships was not originally run, and no monuments set up indicative of it, its location is to be determined by measure according to the deed.

And in such a condition the owner of the township having the older title will first receive his quantity by admeasurement.

WRIT OF ENTRY to recover a parcel of land lying on the northerly end of township No. 20, which was particularly described; and also to recover $3000, for rents and profits and for destruction and waste within six years before the commencement of the action, which was on Aug. 1, 1846.

At the trial in 1851, the jury not being able to return a verdict, it was agreed to submit the case, upon the evidence admissible, to the decision of the full Court.

The controversy is, as to the dividing line between townships Nos. 20 and 21, in the eastern division of Bingham's Penobscot purchase. The plaintiff owns No. 20, and the defendants No. 21.. Both claim under the same grantors. The demandant's title was by deed dated Feb'y 9, 1834; and the tenant's by deed dated May 30, 1844.

The conveyance to demandant and one Dickinson, whose title the demandant subsequently acquired, was of the town of Crawford, (No. 20,) and was abutted on the adjoining townships, and was six miles on each side, and referred, as the title intended to be conveyed, to that derived by the grantor from the Commonwealth of Massachusetts.

In 1786, the Commonwealth of Massachusetts located the lottery lands, of which these townships were a part, and Rufus Putnam returned his survey and plan of them, which was before the Court. In that location the dividing line between these townships was not run.

The nature of the evidence bearing upon the matter in issue, and the points taken by the parties, may be learned

from the opinion, which will be better understood from the following diagram : —

*Downes & Cooper*, for tenants.

*J. Lowell* and *J. Granger*, for demandants.

The opinion of the Court, at the time of the submission of this case, consisting of SHEPLEY, C. J., TENNEY, WELLS and HOWARD, J. J., was drawn up by —

TENNEY, J. — The demandant claims to derive title to the premises described in the writ from the representatives of the late William Bingham; and the tenants defend upon the right supposed to be acquired by them through several mesne conveyances from the same source.

The foundation of the demandant's title is a deed to himself and one Dickinson, and is dated Feb'y 9, 1834. This describes a "parcel of land lying in, and being the town of Crawford in the county of Washington and State of Maine, numbered twenty, and butted and bounded as follows, viz: on the north six miles by townships numbered twenty-one and sixteen; on the east six miles by townships numbered sixteen or Alexandria, and fifteen; on the south six miles by township numbered nineteen; and on the west six miles by townships numbered twenty-five and twenty-six, containing twenty-three thousand and forty acres," excepting therefrom certain parcels particularly described in the deed, "meaning to convey nineteen thousand five hundred and twenty acres, more or less, according to a survey and plan of said town by Rufus Putnam, surveyor," "meaning to convey to said Dickinson and Talbot the same title which said Bingham derived from the Commonwealth of Massachusetts." No survey, plan or surveyor is otherwise referred to in the deed. And the deed from the Commonwealth of Massachusetts to William Bingham refers to no survey or plan.

The title of the tenants is under a deed dated May 30th, 1844, to them of several townships, including township numbered twenty-one, reserving from the latter certain parcels specified in the deed; all containing one hundred and six thousand one hundred and twenty-three acres, more or less, according to the survey of John Peters and Addison Dodge, surveyors, "meaning to convey the same title which the said Bingham derived from the Commonwealth of Massachusetts."

No controversy is made by the parties, that township No. 20, is southerly of and contiguous to No. 21; and is the

property of the demandant; and that the tenants are the owners of the latter township. It is agreed that, in the original location of the fifty townships of the east division of the lottery lands in Maine by Rufus Putnam, including those in controversy, the dividing line between Nos. 20 and 21, was not run or marked upon the earth. The true location of this dividing line is the great point in controversy.

The demandant contends, that he has exhibited proof of a line as the northern boundary of township No. 20, run by the authority of his grantors, and marked as such upon the earth, prior to the execution and delivery of their deed to him and Dickinson. This line terminating at a hemlock tree at one end, is called the hemlock tree line.

The tenants deny, that any line was run by the authority of the grantors in the deed to Dickinson and Talbot corresponding with the hemlock tree line. But they contend on the other hand, that the proprietors under whom both parties claim, did cause to be run and perfected a line as the northern boundary of No. 20, which is farther south than the one claimed by the demandant; and being indicated at one of its terminations by a pine tree marked, is called the pine tree line.

No evidence in the case shows that the hemlock tree line was extended the entire width of the range which embrace the townships Nos. 20 and 21 ; or that such line, so far as it was run, was made with any such design as is claimed by the demandant, any farther than the intention is manifested by the marks indicating the line. The surveyor, who it was attempted by the demandant to be shown run this line under the direction of the general agent of the proprietors, from whom both parties claim title, denies that he undertook to run a line at that place, as the boundary in question, or did in fact run wholly or partially any such line. This line not being perfect in its extent at best, and not having been proved to have been made as a boundary between Nos. 20 and 21, is disregarded.

The evidence relied upon by the tenants, to show that the

surveyor appointed under the authority of the proprietors
aforesaid, did run and mark the pine tree line perfectly from
one side of the township to the other, is very full and clear.
But it is equally clear that this line was run after the pro-
prietors had parted with their title in No. 20, and there
being no evidence that the demandant, or any one interested
in that township was a party to that survey at the time it
was made, his rights cannot in any degree be affected by the
location of this line. No evidence was adduced that any
other attempt had been made, which is entitled to have an
influence to establish the boundary in question.

It is contended, however, by the demandant, that the pro-
prietors at a time when the title to townships Nos. 20 and
21, and all others contiguous thereto, was in them, did acts
upon the other townships which establish the boundary be-
tween Nos. 20 and 21. An attempt was made by him to prove
that the lines of township No. 16, adjoining those now owned
by the parties, were run according to certain prescribed di-
rections of the proprietors; and in doing this a certain
tract called the Thatcher block, was located upon that por-
tion of No. 16, which is represented upon the Common-
wealth's plan made by Rufus Putnam, as projecting further
west than other portions of the same; and that the south-
ern line of this block is very nearly or quite a continuation
of the hemlock tree line. And it was insisted, as matter of
law, that the hemlock tree line was therefore the true north-
ern boundary of No. 20. The proprietors were at liberty
to run such lines upon No. 16 as they chose to do, influenc-
ed by any motives which they might have entertained. The
lines so run could have no effect beyond the object sought
by them, and the results which were the necessary conse-
quence. They could have made the location of the Thatcher
block on any lands to which they had title, and such loca-
tion could not be conclusive upon any question of boundary,
beyond the purpose designed.

Again it is insisted, that if the proprietors, previous to
the conveyance to the demandant and Dickinson, established

the south-west corner of Princeton, represented on Putnam's plan as No. 17, of which there was evidence, the north line of No. 20 must be the same distance south of this corner which it is represented to be on the plan. The proprietors may establish monuments indicative of the boundaries of townships owned by them, and the parties to a conveyance having reference thereto will be governed by them, but they cannot necessarily have any other effect.

The monuments may be erroneously fixed, and other facts having no reference to adjoining townships, may have an important connection therewith. As in the case of the Thatcher block, the location of a monument for one purpose cannot legitimately have a controlling influence upon a question entirely distinct, and not shown at the time to exist. It is very clear, that if such lines and monuments as were attempted to have been made and fixed upon the townships and as boundaries of such townships had been proved, the legal result insisted upon would not follow; and as facts, they are in their nature inconclusive upon the question involved.

Another principle has been invoked by the parties, and each contends, that by its application, a satisfactory result may be obtained. When a tract of land in townships or distinct parcels is represented on a plan or map which is referred to as a part of a description of the same, and the outer boundaries of the whole are exhibited with precision by lines and monuments upon the face of the earth actually existing, and nothing designates the interior boundaries of the townships or parcels on the earth; in order to fix the latter the plan or map is protracted upon the earth with accuracy. And the several townships or parcels thus found and marked will be located with certainty. *Brown* v. *Gray;* 3 Greenl. 126; *Mosher* v. *Berry,* 30 Maine, 83.

By the plan of the Commonwealth of Massachusetts, made by Rufus Putnam, and dated 1786, the north-east corner of No. 21 is a natural monument, supposed to be immovable, being a stream of water which issues from the lake above.

Evidence is reported tending to fix the north-west corner of No. 21, upon White's island, which is in the Schoodic lake, located by John Peters, prior to the deed of the Commonwealth of Massachusetts to William Bingham, conveying this township with others. In that deed, townships numbered 21 and 17, are described as bounded northerly on Schoodic river and lake, including the islands therein lying south of a continuation of the said east and west line run by John Peters.

Assuming this line to be such boundary, and adopted by· the Commonwealth of Massachusetts as the line intended to be represented by the corresponding line on the Commonwealth's plan, it will unquestionably, as a whole, be farther north than the north line of No. 21, protracted upon the earth from the plan alone, notwithstanding the length of the east lines of Nos. 20 and 21 together is greater than the west lines thereof upon the earth and the relative length of each upon the earth is the reverse of that shown by the plan. This excess in one and deficiency in the other may be divided according to the rule already stated; and by a compound modification make the course of a line dividing the townships Nos. 20 and 21 the same as that shown by the plan. *Loring* v. *Norton,* 8 Greenl. 61.

By the application of the principle contended for, to the assumed fact, that the northern boundary was actually located as before stated, the dividing line between the two townships, on the same course with that laid down upon the Commonwealth's plan, will be as far south at least in every part of it as the south line of the tract described in the demandant's writ, and will entitle the tenants to hold possession of the same.

But the principle contended for is not applicable to the facts reported in this case.

There is no evidence that Rufus Putnam located upon the earth, in his survey, the northern line of township No. 21, or erected monuments indicative thereof. And there are reasons of an affirmative character for supposing that he

never did so. The north-west corner of that tract, on the hypothesis that such a line was run, instead of being on the main land, as represented by the plan, is upon an island far eastward of the west margin of the lake. By the plan made by the surveyor appointed by the Court, the west line of No. 21 is for a considerable distance in the lake, which extends westerly of this line several miles, whereas the same line on the plan is far west of the lake. Errors so gross could not have existed if monuments had actually been erected, indicating the northern boundary of No. 21.

In order to make any plan the part of the description in a deed, such plan must be distinctly referred to as such. *Prop'rs Ken. Purchase* v. *Tiffany*, 1 Greenl. 219. Neither of the deeds under which the parties severally claim from the Commonwealth, or those from William Bingham, which are respectively the foundation of the title of each party to the townships Nos. 20 and 21, refer to any plan whatever as a part of the description. Consequently the rights of the parties cannot be affected by the doctrine which otherwise might have an influence.

If the northern line of township No. 21 was actually run by John Peters, before the conveyance from the Commonwealth to William Bingham, and is referred to therein as the true line of that township, it may be material in fixing the limits thereof, as between the Commonwealth and its grantee, and those claiming under the latter; but without reference to any plan it cannot control in any degree the southern boundary of the same township, and thereby affect the rights of the demandant to township No. 20. The plan of Putnam, inadmissible of itself, as descriptive of the land conveyed, cannot be legitimate evidence by the proof of a line referred to, in the deed of the Commonwealth to William Bingham.

There is then no proof of the establishment of a line by proper authority between townships Nos. 20 and 21, before the delivery of the deed to Dickinson and Talbot; or since that time, by the authority or consent of any one interested

in the former of those tracts. No plan being referred to as part of the description of either township, the line in controversy cannot be found by the protraction of any plan upon the earth. It is a case where monuments fail; and consequently nothing can extend or limit the distances expressed in the deeds. The conveyance under which the demandant holds title, was made at a time when the grantors were the proprietors of township No. 21, and the tenants have no rights by the deed, to them subsequently executed, superior to those from whom their title is derived.

The southern boundary of township No. 20, or Crawford, is township No. 19, and the actual location of this boundary is not in controversy. At the time the survey was made by the surveyor appointed by the Court, the demandant claimed a point in the west line of townships Nos. 19 and 20, as the southwest corner of the latter, where was found a stake, hewed square. It does not appear that any denial was made in behalf of the tenants, that this stake was such corner; and no evidence is reported tending to show that this was not the south-west corner of that township. The south-east corner of the same township and lines running therefrom northerly, southerly and westerly, existing for about thirty years, are equally well established. The distance from this south-west corner is six miles and three rods to the pine tree line. The distance from the south-east corner to the pine tree line is five miles three hundred and nineteen rods and ten links.

The demandant alleges a disseizin by the tenants, of a parcel of land bounded southerly by the pine tree line, and extending northerly therefrom one hundred and eighty rods.

By the tenant's plea of *nul disseizin,* and issue thereupon joined, they defend the whole tract described in the writ. Under the issue presented, the demandant is entitled to a gore of land described as follows, viz :— Beginning at a point in the pine tree line, represented by the beech tree, upon the plan made by the surveyor appointed by the Court, thence running northerly on the line laid down upon the

plan, fifteen links or three-fifths of a rod, thence on a course which if continued would strike the west line of Crawford, six miles from the south-west corner thereof, to its intersection with said pine tree line, thence easterly to the first mentioned bounds.

Acc⌐.ding to the agreement of parties, the tenants are to be defaulted, and judgment against them for the tract of land last above described.